HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL B.B. NHYE, Individually,

Plaintiff,

v.

DARCI CECCANTI, et al.,

Defendants.

Case No. CV10-5069 RBL

ORDER ON PIERCE COUNTY DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on the Defendants' Motion to dismiss Plaintiff's claims under Rule 12(b)(6) [Dkt. #23]. The case involves a civil rights claim by *pro se* Plaintiff Michael Nhye, an African American, who claims that his admittedly unregistered and illegally parked vehicles were towed, while similarly situated cars owned by white neighbors were not. He claims he was the victim of racial profiling and other discrimination, and seeks damages and punitive damages under 42 U.S.C. §§1981, 1983, 1985 and 1986, and Chapter 49.60 RCW. Defendants are a wide variety of individuals and entities allegedly responsible for the discrimination. The "Pierce County Defendants" include the County, its Executive, Patrice McCarthy, Sheriff Paul Pastor, Under Sheriff Eileen Bisson, Chief Richard Adamson, Sergeants Michael

ORDER
Page - 1

Blair, Franklin Clark, and Jacob Greger, and Deputy Brian Heimann and his wife Cindy[1].

These Pierce County Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6), arguing that he has failed to state a claim against them under the referenced, or any other, authorities.

**A.    Factual summary.**

Plaintiff's complaint alleges the following: On July 19, 2009, in response to a neighbor's complaint about Mr. Nhye's vehicles, Deputy Heimann advised the Plaintiff that two of his cars were parked illegally (blocking sidewalks) and had expired tabs. He told Nhye that the cars would be towed if they were not moved. Two other cars were also marked for towing that day, though there were "dozens" of other cars in the vicinity that were either illegally parked or had expired tabs and were not marked for towing. Because he was being discriminated against, Nhye did not feel he had to move the cars, and he did not. According to Plaintiff's Response [Dkt. # 33], he had (somewhat inexplicably) himself called 911 on July 5 to report that a neighbor had parked in front of the neighbor's house, and the Deputies who responded did not tow the offending car.

On July 25, Heimann returned, and wrote a ticket for a car parked in front of a fire hydrant. He also towed two of Plaintiff's illegally parked cars with expired tabs and/or no license plates. Plaintiff claims in his Response [Dkt. # 33] that he did not and to this day does not know where his vehicles are, though he apparently does know that they were towed by "J&J Auto Repair." Plaintiff contends that dozens of cars in his neighborhood are parked illegally and are not subject to towing. He contends his own cars were towed because he is an African American, and the others were not towed because they belong to his white neighbors. Plaintiff does not dispute that his cars were parked illegally or that they had expired tabs and/or no license plates.

---

[1] Plaintiff recently filed a Motion to Amend his complaint [Dkt. #40]. His proposed amended complaint would not name Cindy Heimann as a defendant, and would instead add a variety of additional defendants. That Motion will be the subject of a separate Order.

**B.     Discussion**

    **1.     Rule 12(b) (6) Standard**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule. He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions." 127 S.Ct. 1955, 1964-65 (2007). The litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at 1974.

    **2.     Pierce County's Liability**.

Plaintiff Nhye's claim against Pierce County is not entirely clear, though it seems to stem from the fact that Deputy Heimann is a Pierce County employee. Pierce County argues for dismissal of Nhye's claims against it, pointing out that Plaintiff has not asserted that it took any action or failed to take any action, and that Mr. Nyhe literally "fails to state a claim" against Pierce County.

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). There is no respondeat superior liability[2] under 42 U.S.C. §§ 1981, 1983, or

---

[2]Nor is there such liability for claims arising under Chapter 49.60 RCW. *See*, for example, *DeWater v. State*, 130 Wash.2d 128, 135 (1996).

ORDER
Page - 3

1985.

Plaintiff has not alleged that Deputy Heimann acted pursuant to a County policy of towing only those illegally parked cars owned by African Americans, or that it somehow ratified that conduct. The Plaintiff's claim against the County is therefore DISMISSED.

### 3. Liability of County Executive, Sheriff, under Sheriff, and Chief.

The Motion to Dismiss Defendants McCarthy, Pastor, Bisson and Adamson is based on a similar argument; namely that the Plaintiff's complaint fails to allege that any of these individuals took any action, or failed to take any action, with respect to plaintiff's vehicles. They are apparently named solely as the superiors of the Deputy who is alleged to have towed Nhye's vehicles because he is African American, and failed to tow similarly situated vehicles owned by his neighbors because they are white. As the Moving parties point out, even if Nhye *had* alleged that these entities were vicariously liable for the acts of Heimann, the Complaint would still fail to state a claim against them because they are not as a matter of law vicariously liable for his actions, for the reasons described above.

Plaintiff's argument for liability of these supervisors is not clear. The bulk of his lengthy response is dedicated to arguing and attempting to demonstrate that numerous cars in the immediate vicinity and beyond were also parked illegally, and/or with expired tabs or missing plates. Much of the Response claims (as does the Complaint) that Heimann is a friend of Defendant Ceccanti (the property owner who apparently complained about Nhye's vehicles) and conclusorily attributes to both of them some racial animus. It does not at any point articulate what it is that Defendants McCarthy, Pastor, Bisson and Adamson did or did not do with respect to the "discrimination" at issue. The Plaintiff's Complaint against these defendants fails to state a claim under Fed. R. Civ. P. 129b0(6) and *Twombly*, and those claims are DISMISSED.

### 4. Liability of Blair, Clark, and Greger.

Defendants Blair, Clark, and Greger also seek dismissal of Plaintiff's Civil Rights claims against them. These Defendants are sergeant supervisors of Deputy Heimann alleged to have been (or, more

ORDER
Page - 4

specifically, an unidentified *one* of them was alleged to have been) on the scene "for a minute" before Heimann allegedly marked Plaintiff's cars for towing in the event they were still there in the future. Despite Plaintiff's conclusory claims that these defendants subjected him to racial profiling and discrimination, he has not (and cannot) articulate that any of them actually did (or did not) do anything with respect to the towing of his vehicles. None is even alleged to have any substantive participation in any of the events described in the Plaintiff's Complaint.

Furthermore, even if one of these individuals can be deemed to have violated Mr. Nhye's Constitutional rights, or violated 42 U.S.C §1981, 1985, or 1986, the court must determine whether they are qualifiedly immune from such claims.

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). In analyzing a qualified immunity defense, the Court must determine first, whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and then, whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id*. The Supreme Court has recently held "that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

In this case , even if it is assumed that these sergeant Defendants violated Mr. Nhye's rights under the statutes and Constitutional provisions he has cited, the court must determine whether those rights were

"clearly established" at the time of the alleged violation. If they were not, these Defendants are entitled to qualified immunity, even though their conduct constituted a violation of Mr. Nhye's rights.

It is not clear from the Plaintiff's Complaint what it is that one of these Defendants did to violate any of his rights under the Constitution or the statues he cites. One of these three was, according to the Plaintiff, present "for a minute" prior to the time Heimann marked the admittedly illegally parked vehicles for towing, unless they were moved "by the time he returned." There is no right of which the court is aware for Mr. Nhye to leave illegally parked vehicles with expired tabs and/or no license plates on public streets. There is no right for him to have one of these three defendants do something a week in advance of the towing to prevent it. And even if there was such a right, there is no authority that the right was "clearly established" such that the officer violating it loses his qualified immunity form suits such as this one.

The Motion to dismiss these officers is GRANTED, and Plaintiff Nhye's claims against them are DISMISSED.

     5.   **Liability of Heimann.**

Remaining for the court's consideration is the Motion of Defendant Heimann to Dismiss Plaintiff Nhye's claims against him. According to Plaintiff, Heimann responded to a complaint from his friend, Defendant Ceccanti, and marked the cars for towing. He told Mr. Nhye why he had done so, and what Nhye had to do to avoid having them towed (move them). According to Mr. Nhye, he did not move the cars because he was being discriminated against due to his race. He admits the vehicles were parked illegally and were not property licensed. He even seems to admit that such cars are subject to being towed.

A week later, Heimann followed through and had the cars towed. Mr. Nhye apparently has not retrieved them, a year later, claiming he does not know where they are. Nhye alleges without any support that the cars were towed due to his race, and that similarly illegally parked cars were not towed. He does not allege and has not demonstrated that the Deputy was aware of the other vehicles parking status, does not

discuss[3] whether they too received a one week warning that they would be towed, and does not claim or demonstrate that Heimann even knew of the race of the various cars' owners. This argument is akin to an argument that one should not be ticketed for speeding because other cars were speeding and were not ticketed.

Nevertheless, it is at least theoretically possible that plaintiff Nhye could, consistent with the facts alleged in his complaint, demonstrate such facts and establish that Heimann targeted him due to his race. His ability to do so must be tested on a Motion for Summary judgment. It is not amenable to resolution on a Rule 12(b) (6) Motion, even after *Twombly*. The Motion to Dismiss Defendant Heimann (and his wife) is DENIED.

Plaintiff Nhye's claims against the remaining Pierce County Defendants are DISMISSED.

IT IS SO ORDERED.

Dated this 10th day of August, 2010.

*[signature: Ronald B. Leighton]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[3] Defendants seek to strike the various Declarations attached to Plaintiff's Response, correctly pointing out that their rule 12(b)(6) Motion seeks dismissal of the complaint on its face. The Court will not strike the declarations, but has not considered them in ruling on the Motion.